**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 22-cv-20199-BLOOM/McAliley**

CHARLES M. GREENE, *individually*,
*and on behalf of all those similarly situated*,

    Plaintiff,

v.

THE TERMINIX INTERNATIONAL
COMPANY LIMITED PARTNERSHIP,

    Defendant.
_____/

**ORDER ON MOTION TO COMPEL ARBITRATION**

**THIS CAUSE** is before the Court upon Defendant The Terminix International Company Limited Partnership's ("Defendant" or "Terminix") Motion to Compel Arbitration and to Dismiss, ECF No. [18] ("Motion"). Plaintiff Charles M. Greene ("Plaintiff" or "Greene") filed a Response, ECF No. [22], to which Defendant filed a Reply, ECF No. [23]. The Court has carefully considered the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is granted in part.

**I.    BACKGROUND**

Greene commenced this case by filing a complaint against Terminix in state court, alleging claims on behalf of himself and a putative class, for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), the Florida Consumer Collection Practices Act ("FCCPA"), breach of contract, and unjust enrichment. *See generally*, ECF No. [1-1] at 2-26 ("Complaint"). The claims arise from Terminix's allegedly wrongful retention of refunds due for time remaining on year-long residential pest control service contracts, when those contracts are canceled. *Id.* ¶¶ 2-3. Greene alleges that he purchased an annual service plan with Terminix for the period between

June 22, 2020 to June 22, 2021 for $345.00 ("Service Contract"). *Id*. ¶ 13. On July 17, 2020, Greene sold his home and thereafter informed Terminix of his decision to cancel the Service Contract and demanded a prorated refund. *Id*. ¶¶ 15-16. According to Greene, Terminix refused to process a refund until Green filed an administrative complaint with the Florida Department of Agriculture and Consumer Services, Division of Agricultural Environmental Services. *Id*. ¶¶ 19-20. Greene followed with the filing of his Complaint in state court. On January 14, 2022, Terminix removed this case to federal court pursuant to the Class Action Fairness Act of 2005 ("CAFA"). ECF No. [1].[1] In the Motion, Terminix seeks to compel arbitration of the claims asserted in the Complaint based upon an arbitration clause contained in the agreement signed by Greene (the "Termite Protection Plan" or "Plan").

II. **LEGAL STANDARD**

The presence of a valid arbitration provision raises a strong presumption in favor of enforcement. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 630-31 (1985) (stressing that the enforcement of a mutually agreed upon arbitration or forum-selection clause serves as an "indispensable precondition to the achievement of the orderliness and predictability essential to any international business transaction"). Indeed, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, "embodies a 'liberal federal policy favoring arbitration agreements.'" *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366 (11th Cir. 2008) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Accordingly, the FAA requires courts to "rigorously enforce agreements to arbitrate." *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 312 F.3d 1349, 1357-58 (11th Cir. 2002) (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 625-26), *abrogated on*

---

[1] On May 31, 2022, Judge Williams entered an order of recusal, ECF No. [24], and this case was reassigned to the undersigned.

*other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emps.*, 134 S. Ct. 773 (2014); *see also Hemispherx Biopharma, Inc.*, 553 F.3d at 1366 (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). Under the FAA, a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Despite courts' proclivity for enforcement, a party will not be required to arbitrate where it has not agreed to do so. *See Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010), *aff'd*, 433 F. App'x 842 (11th Cir. 2011) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). "Under federal law, arbitration is a matter of consent, not coercion." *World Rentals & Sales, LLC v. Volvo Constr. Equip. Rents, Inc.*, 517 F.3d 1240, 1244 (11th Cir. 2008), *abrogated on other grounds by Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1355 n.1 (11th Cir. 2017). It is axiomatic that the determination of whether parties have agreed to submit a dispute to arbitration is an issue of law subject to judicial resolution. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). Generally, this determination requires the district court to apply standard principles of state contract law. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 939 (1995); *see also P&S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003).

Under Florida law, when presented with a motion to compel arbitration, a court must consider three factors: (1) whether a valid agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived. *Nat'l Auto Lenders, Inc.*, 686 F. Supp. 2d at 1322; *see also Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004) (citing *Marine Envt'l. Partners, Inc. v. Johnson*, 863 So. 2d 423, 426 (Fla. 4th DCA 2003); and *Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999)) ("Under both federal and Florida law, there are three factors for the court to consider in determining a party's right to arbitrate: (1) a

written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived.").

In addition, the Court of Appeals for the Eleventh Circuit has explained that courts should "treat motions to compel arbitration similarly to motions for summary judgment." *Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1215 n.3 (11th Cir. 2021) (citing *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (concluding "that a summary judgment-like standard is appropriate and hold[ing] that a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement")). Once the movant satisfies its initial burden of showing there is no genuine issue of material fact, then "the burden shifts to the nonmovant to show evidence raising a genuine issue of material fact." *Deal v. Tugalo Gas Co.,* 991 F.3d 1313, 1325 (11th Cir. 2021). "A plaintiff challenging the enforcement of an arbitration agreement bears the burden to establish, by substantial evidence, any defense to the enforcement of the agreement." *Inetianbor v. CashCall, Inc.*, 923 F. Supp. 2d 1358, 1362 (S.D. Fla. 2013) (citing *Bess v. Check Express,* 294 F.3d 1298, 1306-07 (11th Cir. 2002)). In determining whether to compel arbitration, district courts must view the facts in the light most favorable to the nonmovant. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

"By its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc.*, 470 U.S. at 213. Thus, if the criteria above are satisfied, a court is required to issue an order compelling arbitration. *See John B. Goodman Ltd. P'ship v. THF Constr., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003) ("Under the FAA, . . . a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute.").

### III. DISCUSSION

Terminix argues that it has established each factor that courts consider in determining a party's right to arbitrate: (1) there is a valid agreement to arbitrate; (2) an arbitrable issue exists; and (3) Terminix did not waive its arbitration rights. Greene does not dispute that the second and third factors are satisfied, and the Court finds that they are. Rather, Greene disputes that there was an agreement to arbitrate. The Court therefore focuses its analysis on whether there exists an agreement to arbitrate.

### A. Terms of the Plan

Terminix asserts that Greene executed the Plan, which contains a warning regarding arbitration above the signature block.[2] The Plan contains the following statement:

> **ANY ADDITIONAL PROVISIONS ATTACHED HERETO, INCLUDING THE MANDATORY ARBITRATION AGREEMENT AND THE OTHER TERMS AND CONDITIONS ON THE REVERSE SIDE AND THE INSPECTION GRAPH DATED  5/31/06  ARE PART OF THIS PLAN.**

ECF No. [18-1] at 8. The "Terms and Conditions" contain a mandatory arbitration provision that provides as follows:

> **12. MANDATORY ARBITRATION.** Purchaser and Terminix agree that any claim, dispute or controversy ("Claim") between them or against the other or the employees, agents or assigns, of the other, and any Claim arising from or relating to this agreement or the relationships which result from this agreement, including but not limited to any tort or statutory Claim, shall be resolved by neutral binding arbitration by the National Arbitration Forum ("NAF"), under the Code of Procedure ("Code") of the NAF in effect at the time the Claim is filed. [. . .] [A]ny arbitration proceeding under this agreement will not be consolidated or joined with any arbitration proceeding under any other agreement, or involving any other property or premises, and will not proceed as a class action.

ECF No. [18-1] at 18. As a result, Terminix argues that Greene's claims are subject to the

---

[2] Attached to the Motion, Terminix provides the Declaration of Jeffrey Curtis, the Director of Termite Damage Claims for Terminix, ECF No. [18-1] ("Curtis Declaration"), which attaches, in pertinent part, a copy of the Plan signed by Greene, *see* ECF No. [18-1] at 8-15, and a blank Plan form with "Terms and Conditions," *see* ECF No. [18-1] at 17-18.

arbitration provision and requests the Court compel arbitration.

Greene does not dispute that he signed a contract containing the reference to mandatory arbitration but asserts that he did not receive the "reverse side" of the contract, which contained the "Terms and Conditions." Greene points to the documents accompanying his Plan, which are attached to the Curtis Declaration, and do not include the "Terms and Conditions." In addition, Greene points out that Terminix states in its Motion that "it is unclear what universe of documents [Greene] possessed at the time he signed the agreement." *See* ECF No. [22] at 2; ECF No. [18] at 3. As such, Greene contends that Terminix fails to show that an agreement to arbitrate exists here. Upon review, the Court disagrees.

    **B. Existence of an Agreement to Arbitrate**

Where the parties dispute whether an agreement to arbitrate exists at all, the Court must begin by making a threshold determination as to whether a contract has been formed. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." (citation omitted)); *Compere v. Nusret Miami, LLC*, 396 F. Supp. 3d 1194, 1200 (S.D. Fla. 2019). Furthermore, the party asserting the existence of a contract containing an arbitration agreement "must prove its existence by a preponderance of the evidence." *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2008). The determination of whether an arbitration agreement exists is a "matter of contract." *First Options of Chi., Inc.*, 514 U.S. at 943. "Under Florida law, the party seeking to enforce arbitration has the burden of proving 'offer, acceptance, consideration and sufficient specification of essential terms . . . by a preponderance of the evidence.'" *Hudson v. P.I.P., Inc.*, No. 18-61877-CIV, 2020 WL 5647009, at *6 (S.D. Fla. Mar. 13, 2020) (quoting *Schoendorf v. Toyota of Orlando*, No. 6:08-cv-767-Orl-19DAB, 2009 WL 1075991, at *6 (M.D. Fla. Apr. 21, 2009)), *report and recommendation adopted*, No. 18-61877-CIV, 2020 WL 5647051 (S.D. Fla.

Apr. 2, 2020). Moreover, a "meeting of the minds of the parties on all essential elements is a prerequisite to the existence of an enforceable contract." *De Beers Centenary AG v. Hasson*, 751 F. Supp. 2d 1297, 1302 (S.D. Fla. 2010) (quoting *Bus. Specialists, Inc. v. Land & Sea Petroleum, Inc.*, 25 So. 3d 693, 695 (Fla. 4th DCA 2010)). "A valid contract—premised on the parties' requisite willingness to contract—may be 'manifested through written or spoken words or inferred in whole or in part from the parties' conduct." *Kolodziej v. Mason*, 774 F.3d 736, 741 (11th Cir. 2014) (citing *L&H Constr. Co. v. Circle Redmont, Inc.,* 55 So. 3d 630, 634 (Fla. 5th DCA 2011)).

Here, Greene does not dispute that he signed the contract which references mandatory arbitration, the contract incorporates the "Terms and Conditions," and the "Terms and Conditions" include a mandatory arbitration provision. In addition, Greene has not disputed that he paid annual renewal fees to keep his Plan active every year between 2007 and 2020 after signing the contract in 2006, or that he periodically received a Termite Guarantee, which contains the following language:

> See your original Termite Plan for additional conditions and limitations, which are incorporated herein by reference, and shall control in the event of any conflict with this Summary. The Plan provides for arbitration of any controversy or claim arising out of or relating to the Plan. A copy of the Plan is available from your local Terminix Service Center.

ECF No. [18-1] at 21. Rather, Greene suggests that the evidence establishes that *he* made an offer to Terminix, which Terminix accepted, and therefore that Terminix should be precluded from varying its terms. *See* ECF No. [22-1] at 2-3. While somewhat creative, the argument is not persuasive. Greene cites no authority to support his argument that a customer's request for clarification of the terms of a service contract may be interpreted to constitute an offer for purposes of contract formation.

The only fact Greene points to is that he did not receive the "Terms and Conditions" containing the arbitration provision. However, that fact alone does not render the arbitration

7

provision unenforceable, especially where he has not disputed signing the contract and acknowledges the contract that he *did* sign contains a clear reference to mandatory arbitration. *See Herrera Cedano v. Morgan Stanley Smith Barney, LLC*, 154 F. Supp. 3d 1318, 1325-26 (S.D. Fla. 2016) ("Plaintiff's argument that he did not receive the [Arbitration] Agreement, on its own, is not relevant to this Court's consideration in determining whether the Agreement is enforceable under the FAA."). Even assuming Greene did not receive the "Terms and Conditions," the language above the signature block on the contract he signed at the very least put him on inquiry notice of the arbitration provision. *See e.g. Avatar Props., Inc. v. Greenbaum*, 27 So. 3d 764, 766-67 (Fla. 2d DCA 2010) (holding there was an agreement to arbitrate where the parties' purchase and sale agreement incorporated by reference a home warranty containing an arbitration clause despite the fact that the warranty was not attached and the purchase agreement did not mention arbitration, but agreement stated that warranty available for examination).

It is well established that "one who signs a contract is generally bound by the contract." *Kendall Imports, LLC v. Diaz*, 215 So.; 3d 95, 100 (Fla. 3d DCA 2017). "Unless one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract, it is binding." *Id.* (citing *Spring Lake NC, LLC. v. Holloway*, 110 So. 3d 916, 917 (Fla. 2d DCA 2013)). Greene presents no facts or circumstances to indicate that he was prevented from reading the Plan documents. Nor does he dispute that the Plan documents, including the "Terms and Conditions," were available to him. *See Valencia*, 2017 WL 7733158, at *3 (concluding that the arbitration agreement was valid because "nothing in the record [ ] suggest[ed] that Plaintiff was coerced or that he was not given an opportunity to understand the contents of what he was signing"). Additionally, arbitration "provisions will be upheld as valid unless defeated by fraud, duress, unconscionability, or another 'generally applicable contract defense.'" *Parnell v. CashCall, Inc.*,

804 F.3d 1142, 1146 (11th Cir. 2015) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). Greene has presented no evidence regarding any applicable contract defenses; therefore, the Court concludes that a valid agreement to arbitrate exists in this case. *See Bazemore*, 827 F.3d at 1333 (a dispute that is neither supported by evidence nor created by evidence but is just "merely colorable" or "not significantly probative" is not "genuine."); *see also Valencia v. 1300 Ocean Drive, LLC*, No. 17-20669-CIV, 2017 WL 7733158, at *2 (S.D. Fla. Dec. 4, 2017) ("A mere scintilla of evidence supporting the opposing party's position will not suffice to defeat a finding that an arbitration agreement was formed. There must be enough of a showing that the jury could reasonably find for that party.").

### C. Severing Class Waiver Terms

In the Motion, Terminix argues that, in addition to compelling Greene to arbitrate his claims, the Court should preclude him from pursuing class claims in the arbitration. Greene responds that because the class waiver language is not present on the part of the contract that he received and read, he should not be bound by it. Indeed, "the availability of class arbitration is a question of arbitrability, presumptively for a court to decide, because it is a gateway question that determines what type of proceeding will determine the parties' rights and obligations." *JPay, Inc. v. Kobel*, 904 F.3d 923, 935 (11th Cir. 2018). Here, the applicable language states that "any arbitration proceeding under this agreement will not be consolidated or joined with any arbitration proceeding under any other agreement, or involving any other property or premises, and will not proceed as a class action." ECF No. [18-1] at 18. Greene's argument that the Court should not enforce this provision because it does not appear on the portion of the contract that he signed is unavailing. Consistent with the Court's previous analysis, Greene is bound by the language of the Plan as a whole, which includes the "Terms and Conditions" containing the arbitration provision and class action waiver. "It is well settled that a court cannot rewrite the terms of a contract in an

attempt to make otherwise valid contract terms more reasonable for a party or to fix an apparent improvident bargain." *Leverso v. SouthTrust Bank of Ala., Nat'l Assoc.*, 18 F.3d 1527, 1534 (11th Cir. 1994) *see also Travelers Indem. Co. of Conn. v. Richard Mckenzie & Sons, Inc.*, 10 F.4th 1255, 1264 (11th Cir. 2021) (Courts "may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." (citation omitted)). Therefore, Greene's claims must proceed in arbitration on an individual basis.

### D. Dismissal or Stay

Finally, Terminix argues that the Court should dismiss this case. In response, Greene requests that rather than dismiss, the Court should stay this case. Pursuant to the FAA,

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

As the Court has previously determined, a stay, rather than dismissal is appropriate where a stay is requested. *See Valiente v. Holiday CVS, LLC*, No. 20-cv-20382-BLOOM/Louis, 2020 WL 2404701, at *2-3 (S.D. Fla. May 12, 2020). Here, Greene requests a stay rather than dismissal, and there is no argument that Greene is in default. A such, the Court finds that a stay pending arbitration is appropriate. *Id*.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [18]**, is **GRANTED IN PART**. Greene's claims shall proceed through arbitration. The Clerk of Court is directed to **STAY** this case pending arbitration and shall mark this case as **CLOSED** for administrative purposes only, and without prejudice to the parties to move to reopen once the

arbitration has been completed.

        **DONE AND ORDERED** in Chambers at Miami, Florida, on June 15, 2022.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record